

# NUMBER 13-13-00003-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ABEL MORENO,                                        **Appellant,**

**v.**

KENNETH W. LANGSTON,                       **Appellee.**

### On appeal from the 267th District Court
### of Jackson County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Abel Moreno filed suit against appellee Kenneth Langston, alleging breach of a contract for the sale of land, and sought specific performance of the contract. Langston answered, arguing that Moreno failed to timely make payments on the contract and that he committed waste upon the property.[1] Langston also filed a counterclaim

---

[1] In addition, Langston asserted special exceptions and several affirmative defenses including prior material breach, waiver, estoppel, justification, and mitigation of damages.

seeking money damages and other relief.[2]   After Langston filed a combined no-evidence and traditional motion for summary judgment, the trial court granted summary judgment against Moreno, and entered judgment in favor of Langston awarding the following relief: (1) cancelation of the Contract for Sale of Land; (2) designation of fee simple with no encumbrances upon the property; (3) liquidated damages in the sum of $19,196.86; and (4) attorney's fees and court costs.   By a single issue, Moreno contends the trial court erred by granting summary judgment.   We reverse and remand.

## I.   BACKGROUND

In January 2003, Moreno contracted with Langston to purchase 21.65 acres of land in Jackson County, Texas.   The contract obligated Moreno to pay Langston monthly installments of four hundred dollars, payable on the 25th day of each month, and stated in relevant part:

BUYER COVENANTS AND AGREES AS FOLLOWS:

1. To make prompt payment of said indebtedness as the same shall become due and payable and to do and perform all of the covenants and agreements herein imposed upon the Buyer.

2. To pay when due all taxes and assessments of every nature and kind, inclusive of State, County, City, and School Taxes, that fall due on said property after the date of this contract.

3. To keep the improvements on said property in good repair and condition and not to permit or commit waste thereof and to permit Seller, Seller's agent or representative, to enter said premises at all reasonable times for the purpose of inspection thereof.

4. That in the event Buyer fails to keep improvements in good repair and condition, as aforesaid, and any sums which may be so paid out by Seller therfor [sic] shall bear interest from the dates of such payments at the rate of (6)% per annum and shall be paid by

---

[2] Moreno did not file an answer to Langston's counterclaim.

> Buyer to Seller upon written demand at the same place at which the hereinabove mentioned installments are payable.

The contract further specified the remedy for buyer's breach of contract:

> In the event Buyer shall default in the prompt payment of said indebtedness or shall violate or omit to perform any of the provisions of this agreement and such default, violation or omission shall continue for a period of ten (10) days, then in any of such events Seller may elect, Buyer expressly waiving demand and notice, to declare the entire unpaid indebtedness, together with all interest accrued thereon, immediately due and payable and enforce collection thereof, or declare this contract cancelled and of no further force and effect, and in the event Seller elects to declare this contract canceled and of no further force and effect, all monies that have been paid to or deposited with Seller will be forfeited and belong to Seller as liquidated damages to compensate Seller for breach of contract and for rental and deterioration of the property, and immediately upon this contract being declared cancelled and of no further force and effect all the rights, claims and interest of Buyer in and to said property shall thereupon terminate and be at an end and the property shall unconditionally belong to the Seller.

After Langston delivered a "Notice of Eviction", Moreno filed a breach of contract suit alleging that he had submitted payments on the contract as agreed, but that Langston had refused to accept his payments. Langston filed a counterpetition alleging that Moreno breached the contract by: (1) failing to timely make his monthly payment within ten days of May 25, 2009; and (2) committing waste on the property by burning and burying objects on the property and allowing Brigham Oil and Gas to dump oil and gas waste on the property.

Langston filed a combined no-evidence motion for summary judgment and traditional motion for summary judgment. With respect to his no-evidence motion, Langston asserted that Moreno "has no evidence to demonstrate that [he] performed under the Contract, by tendering prompt payment for the month for May, 2009 . . . therefore, [he] does not meet all of the elements for a breach of contract claim." With

3

respect to his traditional motion, Langston asserted that Moreno defaulted on the contract by committing two prior material breaches of contract: (1) failing to tender prompt payment under the Contract for the month of May, 2009; and (2) committing waste on the property. In support of his traditional motion, Langston presented the following evidence: (1) Langston's affidavit; (2) a copy of the Contract for Sale; (3) a copy of Moreno's request to landfarm; (4) a copy of the Texas Railroad Commission's authorization for Brigham Oil and Gas to dump oil and gas waste on the property; and 5) Bernard T. Klimist's affidavit regarding attorney's fees. Moreno filed a response, and in support thereof, Moreno attached his affidavit claiming that he tendered payment for May 2009; denying that he committed waste; and asserting that the land value had actually increased. The trial court granted Langston's motions for summary judgment without stating grounds.

## II. SUMMARY JUDGMENT[3]

### A. Applicable Law and Standards of Review

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.—Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*,

---

[3] Langston argues that Moreno failed to address the issue of waste Langston raised in his motion for summary judgment. We disagree. Moreno's response to Langston's motion included a statement from Moreno's affidavit denying that he committed waste. Moreno also argued in the trial court as he does in this court that "there is a fact issue as to a material fact that precludes the granting of this motion for summary judgment." Since Langston brought one motion for summary judgment alleging both no-evidence and traditional grounds, we construe Moreno's argument as responding to both summary judgment grounds.

4

924 S.W.2d 375, 377 (Tex. 1996). A no-evidence summary-judgment motion should be granted if there is no evidence of at least one essential element of the plaintiff's claim. *See Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex. 2003). The burden of producing evidence is entirely on the non-movant; if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). When an order granting summary judgment does not specify the grounds on which summary judgment was granted, a court may uphold the summary judgment on any ground presented in the motion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). If a party moves for both a no-evidence summary judgment and a traditional summary judgment, we will first review the trial court's judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

### III.   PROMPT PERFORMANCE ON THE CONTRACT

5

The elements of a breach of contract action are: (1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex. App.—Corpus Christi 2008, no pet.).

In his no-evidence motion, Langston only challenges the second element of Moreno's claim, arguing that Moreno has no evidence to demonstrate that Moreno promptly tendered payment for May 2009. In his traditional motion, Langston submitted an affidavit attesting that Moreno "tendered the payment due on the Contract for the month of May 2009 on June 11, 2009. The check was not received by [Langston] . . . until June 12, 2009. Payment was not received by [Langston] until 18 days had elapsed from the due date of May 25, 2009." Therefore, Moreno was required to produce a scintilla of probative evidence to rebut Langston's claim and testimony. *See Forbes, Inc.,* 124 S.W.3d at 172.

In support of his response, Moreno submitted an affidavit in which he attested that he "made all payments to [Langston] until Mr. Langston refused to accept my payment *in May 2009.*" (Emphasis added). Since the payment was not due until May 25, with a grace period of ten days, the last day Moreno could have tendered payment for the month of May was June 4, 2009. Resolving any doubts in favor of Moreno, we conclude from this statement that a fact issue exists regarding whether Moreno promptly tendered payment to Langston in May 2009. *See City of Keller,* 168 S.W.3d at 825. Moreno's affidavit creates a scintilla of probative evidence that he performed under the contract. *See Forbes, Inc.,* 124 S.W.3d at 172. Therefore, the trial court should have denied

6

Langston's no-evidence and traditional motions for summary judgment, wherein Langston alleged untimeliness of payment as a breach of contract.

## IV.   WASTE

In addition to non-payment, Langston claims that Moreno also breached the contract by committing waste on the property.   In support of this ground in his traditional motion for summary judgment, he presented evidence that:   (1) the parties executed the contract for sale in 2003; (2) in June 2005, Moreno requested a landfarming permit from the Railroad Commission of Texas; (3) Brigham Oil and Gas received permission from the Railroad Commission of Texas to landfarm 12,000 barrels of drilling mud on 20 acres of the property.   Langston also submitted an affidavit attesting that "[Moreno] burned and buried multiple objects on the property, causing damage to the land."   The affidavit further alleged that "[Moreno] also illegally contracted with Brigham Oil and Gas to dump oil and gas waste on the property."   Moreno responded by affidavit by generally denying that he committed waste and asserting that the property value actually increased.

In the landlord-tenant context, the doctrine of waste serves to protect the landowner's reversionary interest in the property and exists only when one in possession destroys or permanently damages the land, which causes a loss to the persons who subsequently may be entitled to the land.[4]   *R.C. Bowen Estate v. Continental Trailways*, 256 S.W.2d 71, 72 (Tex. 1953); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 753 (Tex. App.—El Paso 2000, no pet.).   The doctrine of waste reflects the implicit duty

---

[4] We treat Moreno's interest in the land as a tenancy.  *See Martinez v. Daccarett*, 865 S.W.2d 161, 163 (Tex. App.—Corpus Christi 1993, no pet.) (concluding that in the event of default in contract for deed, the relationship between parties is one of landlord-tenant).

of a tenant to exercise reasonable care to protect leased premises from injury other than by ordinary wear and tear. Because the tenant has such a duty, its breach constitutes waste. *Id.* To constitute waste, the act allegedly causing it must be wrongful. *R.C. Bowen Estate*, 256 S.W.2d at 72 (defining waste as an injury to the reversionary interest in land caused by the wrongful act of a tenant or other party rightfully in possession); *see e.g. Oldham v. Keaton*, 597 S.W.2d 938, 942 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.) (holding that cause of action for waste includes unauthorized destruction or severance of minerals on or from the land); *Erickson v. Rocco*, 433 S.W.2d 746, 751 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.) (holding that waste includes injury resulting from a failure to exercise reasonable care in preserving the property).

To prevail in his motion for summary judgment, Langston has the burden to show that Moreno caused permanent damage to the property as a matter of law. Langston's nonspecific claim that Moreno buried and burned "multiple objects" fails to show permanent harm to the property and fails to indicate how the property was permanently damaged. In addition, the documentary evidence of the landfarming does not indicate whether the landfarming actually occurred; whether landfarming drilling waste caused permanent harm to the property; and what, if any, damages to the property specifically resulted from any alleged landfarming.[5]

We conclude that Langston failed to meet his burden of proof required for summary

---

[5] While the trial court awarded liquidated damages to Langston, there is no evidence in the record that the harm cause by Moreno's alleged breach is incapable or difficult of estimation, and that the amount of liquidated damages called for is a reasonable forecast of just compensation. *See Stewart v. Basey*, 245 S.W.2d 484 (Tex. 1952) (considering difference between enforceable liquidated damages provision and unenforceable penalty).

judgment.  *See Mowbray,* 76 S.W.3d at 690.  The trial court erred in granting summary judgment for Langston on his counterclaim for breach of contract on this ground.  *See Sauceda,* 268 S.W.3d at 140.

### V.    CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consisted with this opinion.

GREGORY T. PERKES
Justice

Delivered and filed the
11th day of June, 2015.