

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-23-00288-CV

_____

## IN THE INTEREST OF C.K.T., A CHILD

_____

**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C22-30420-CV**

---

## MEMORANDUM  OPINION

---

The mother of C.K.T. appeals from a judgment that terminated her parental rights to her child.  The mother complains that the evidence was legally and factually insufficient for the jury to have found that she constructively abandoned C.K.T., failed to complete her service plan, failed to complete drug treatment, or that termination was in the best interest of the child.[1]  *See* TEX. FAM. CODE § 161.001(b)(1)(N), (O), (P); (b)(2). Because we find that the evidence was legally and factually sufficient for the jury to have found that she constructively abandoned C.K.T. and that termination was in the best

---

[1] The jury answered "No" to endangering surroundings and conduct pursuant to subsections 161.001(b)(1)(D) and (E).  *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E).

interest of the child, we affirm the judgment of the trial court.[2]

## STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 Tex. 2009).

## CONSTRUCTIVE ABANDONMENT

The mother complains that the evidence was legally and factually insufficient for the jury to have found that she intended to constructively abandon C.K.T. Section 161.001(b)(1)(N) states that a parent's rights may be terminated if it is found (in addition to the best interest finding) that the parent has:

> Constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment.

---

[2] The department did not file an appellee's brief in this proceeding. When the appellee fails to file an appellate brief, we nevertheless review the merits of the appellate issues to determine whether reversal of the trial court's ruling is warranted. *Yeater v. H-Town Towing LLC*, 605 S.W.3d 729, 731 (Tex. App.—Houston [1st Dist.] 2020, no pet.). The appellee's failure to respond to appellant's brief does not automatically entitle appellant to a reversal. *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

TEX. FAM. CODE §161.001(b)(1)(N). In the single paragraph devoted to this ground in her brief, the mother argues that the evidence was legally and factually insufficient for the jury to have found that she intended to constructively abandon C.K.T. The mother has cited to no authority, and we have found none in support of her position. The mother argues that due to some testimony regarding mental health and cognitive issues of the mother, there was insufficient evidence for the jury to have found that she could have formed the requisite intent to constructively abandon her child.

Certain subsections of Section 161.001(b)(1) include scienter as part of the necessary finding in order to establish that predicate act for purposes of terminating a parent's rights, such as "knowingly placed the child in surroundings" in subsection D or "knowingly placed the child with persons" in subsection E as examples. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E). Arguably even the subsections which require a finding of voluntariness would require some element of scienter, such as "voluntarily left the child alone or in the possession of another not the parent" in subsections A, B, and C as examples. *See* TEX. FAM. CODE § 161.001(b)(1)(A), (B), (C). We have previously found that scienter is not required for a finding that a parent "engaged in conduct" which endangered a child pursuant to subsection E. *See In the Int. of L.S.*, No. 10-22-00119-CV, 2022 Tex. App. LEXIS 6332 at *4, 2022 WL 3655395 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.). Likewise, we do not find a requirement of scienter in subsection N.

Even if some evidence as to the mother's intent to abandon her child was

necessary, there was evidence from multiple witnesses that mother understood that she needed to complete her services and needed to participate in drug testing but failed to engage in any of her required services to any substantial degree throughout the proceedings. The testimony showed that the mother knew what was required of her in order for C.K.T. to be returned to her.

The mother attended only 18 of her allowed weekly visits with C.K.T. and had missed 44 at the time of the trial. A few of the visits were missed due to lack of transportation, but most were missed with no explanation given by the mother. The mother had not seen C.K.T. for 10 months prior to the trial. At one point, the mother informed the guardian ad litem of C.K.T. that she was in Dallas working on her rap career and could not visit with C.K.T.

The trial court had even extended the court's jurisdiction to give the mother additional time to engage in services, but she did not. The evidence was legally and factually sufficient for the jury to have found that the mother constructively abandoned C.K.T. We overrule issue one.

BEST INTEREST

In her second issue, the mother complains that the evidence was legally and factually insufficient for the jury to have found that termination was in the best interest of the child. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley*

*v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply lists factors that have been or could be pertinent in the best interest determination. *Id*. There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

The department initially received a referral that C.K.T. had been injured in an altercation with mother and another person in the home. Upon investigation, the department determined that an altercation had occurred but that C.K.T. was not injured as described in the referral. C.K.T. was 2 years old at the time of the removal. The mother agreed to a safety plan whereby she would be supervised at all times with C.K.T. by several of her relatives. The mother was not complying with the safety plan and was uncooperative with the investigator. She also admitted to the regular use of cocaine and marijuana. The safety plan became unworkable after a second referral and C.K.T. was ultimately removed and this proceeding commenced. In a hair test, the mother tested positive for cocaine and marijuana. At the time of the removal, C.K.T. did not have any obvious signs of physical abuse; however, he was determined to be significantly speech delayed which necessitated speech therapy. He was otherwise happy and appeared healthy and clean.

Fairly soon after the removal, C.K.T. was placed with his paternal great-

grandmother, where he remained until the trial. The great-grandmother was hoping to adopt C.K.T. She and C.K.T. were bonded to each other and C.K.T. was improving substantially in her home. He had completed speech therapy and started occupational therapy at the time of the trial.

The mother initiated services pursuant to the service plan and completed a drug assessment and psychological assessment. After drug treatment was recommended, the mother attended only 2 sessions and was unsuccessfully discharged. The mother also failed to attend counseling, did not have a stable home or job that she informed the department about, and failed to take most of the drug tests she was required to take. She admitted to the use of cocaine, marijuana, and alcohol about five months after the removal prior to a visit with C.K.T. The caseworker eventually drove her to a drug test approximately 2 months before the trial, which was negative in a urine test, but unable to test due to insufficient hair.

Because the mother's admission of regular illegal drug use was a significant factor in the department's continued involvement prior to the removal of C.K.T., it was reasonable for the jury to determine that the mother's failure to address her drug use and failure to stop using illegal drugs established that the mother lacked the motivation necessary to seek out programs available to assist her in promoting C.K.T.'s wellbeing. *See In re A.B.*, No. 07-19-00180-CV, 2019 Tex. App. LEXIS 9110, 2019 WL 5199299, at *6 (Tex. App.—Amarillo Oct. 15, 2019, no pet.) (mem. op.) (parent's failure to complete

services directly related to reason for child's removal, including substance-abuse assessment, supported finding that termination was in child's best interest because it gave rise to inference that parent did not have ability to motivate himself to seek out resources available to promote child's wellbeing).

Further, a parent's failure to regularly visit her child after removal may support a finding that termination of the parent's rights is in the child's best interest. *See In re T.R.H.*, No. 01-16-00450-CV, 2016 Tex. App. LEXIS 12475, 2016 WL 6873061, at *8 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, pet. denied) (mem. op.). This is because the failure to regularly visit one's child, especially a young child, signals that the parent-child relationship is not an appropriate one and that the parent is unwilling or unable to meet her child's emotional and physical needs. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("Parental absence or lack of involvement is especially telling with respect to the best interest of very young children, like babies and toddlers, due to their inherent vulnerability and particular need for parental attention and nurturing."). As stated above, the mother attended only 18 out of 62 allowed visits with C.K.T. and had not seen him for 10 months at the time of the trial.

Finally, the mother did not attend the jury trial. When a parent fails to attend termination proceedings without a valid explanation, "the factfinder may reasonably infer that the parent is indifferent to the outcome." *In re A.J.D.-J.*, 667 S.W.3d at 826. A parent's failure to attend the final hearing may support a finding that termination is in

the child's best interest. *See id.*

Viewing the evidence under the appropriate standards for legal and factual sufficiency of the evidence, we find that the evidence was legally and factually sufficient for the jury to have found that termination was in the best interest of C.K.T. We overrule issue two.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed February 29, 2024
[CV06]

